UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

SAMSON PRUITT,

    Petitioner,

v.

J. C. HOLLAND,

    Respondent.

Civil Action No. 10-CV-111-HRW

**MEMORANDUM OPINION
AND ORDER**

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

Samson Pruitt is an inmate confined at the Federal Correctional Institution in Ashland, Kentucky. Pruitt has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [R. 2] and has paid the filing fee. [R. 6] Having reviewed the petition[1], the Court must deny relief because Pruitt has not exhausted his administrative remedies with respect to his claims.

---

[1] The Court conducts a preliminary review of habeas corpus petitions. 28 U.S.C. § 2243; *Harper v. Thoms*, 2002 WL 31388736, at *1 (6th Cir. October 22, 2002). Because the petitioner is not represented by an attorney, the petition is reviewed under a more lenient standard. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). At this stage the Court accepts the petitioner's factual allegations as true and his legal claims are liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). Once that review is complete, the Court may deny the petition if it concludes that it fails to establish grounds for relief, or otherwise it may make such disposition as law and justice require. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

## I. Factual and Procedural Background

On June 24, 2005, the United States filed a criminal complaint against Pruitt in the Eastern District of Tennessee charging him with the manufacture of one hundred or more marijuana plants in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and with being a convicted felon in possession of three firearms, including a lever-action rifle, a semi-automatic rifle, and a semi-automatic shotgun, in violation of 18 U.S.C. § 922(g)(1). On July 11, 2005, Pruitt signed a written plea agreement in which he agreed to plead guilty to the charged offenses. On July 26, 2006, the court sentenced Pruitt to a combined term of 262 months incarceration to be followed by a 8-year term of supervised release. Upon remand from the Sixth Circuit for resentencing, on January 7, 2010, Pruitt was sentenced to a combined term of 120 months incarceration to be followed by a 8-year term of supervised release. *United States v. Pruitt*, No. 2:05cv00061-1 (E.D. Tenn. 2005).

On September 9, 2010, Pruitt filed a motion to vacate his Section 922(g) firearms conviction pursuant to 28 U.S.C. § 2255, asserting that his possession of firearms in his home was protected as an individual and fundamental right under the Second Amendment in light of the Supreme Court's decision in *District of Columbia v. Heller*, 552 U.S. 1035 (2008). On November 18, 2010, the trial court denied Pruitt's motion, noting that the Sixth Circuit and other circuit courts of appeal have squarely rejected Second Amendment challenges to Section 922(g), particularly in

light of the Supreme Court's express admonition that its holding "should [not] be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ..." *Cf. United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010).

Pruitt filed his petition for a writ of habeas corpus in this action on October 27, 2010, pressing a distinct but related argument. Pruitt contends that the Bureau of Prisons' categorical exclusion of inmates convicted of firearms offenses - including his conviction for being a felon in possession of a firearm under Section 922(g) - from eligibility for a sentence reduction of up to one year for those inmates who successfully complete the Residential Drug Abuse Program ("RDAP") as authorized under 18 U.S.C. § 3621(e)(2)(B), is unconstitutional in light of the Supreme Court's decision in *Heller*. In essence, Pruitt argues that while the BOP's categorical exclusion from eligibility for firearms offenders was upheld under "rational basis" scrutiny in *Lopez v. Davis*, 531 U.S. 230 (2001), *Heller*'s more recent recognition of the right to bear arms as fundamental under the Second Amendment requires the BOP's regulation to satisfy stricter scrutiny, being narrowly tailored to serve a compelling government interest. [R. 2 at 6-8]

On April 9, 2010, Pruitt filed a request for informal resolution with the prison, in which he contended that his exclusion from consideration for the sentence reduction available following completion of the RDAP was "incorrect," without further elaborating upon his basis for that belief. [R. 2-1 at 1] Because, at that

juncture, Pruitt had not yet been interviewed for the RDAP, let alone completed the program and been denied a sentence reduction, prison staff responded that consideration of the issue was premature. [R. 2-2 at 2]

On April 15, 2010, Pruitt filed a Form BP-229 with the warden, in which he reiterated his assertion that his conviction for being a felon in possession of a firearm pursuant to 18 U.S.C. § 922(g) did not render him ineligible for the sentence reduction. Pruitt offered no indication whether his belief was predicated upon his interpretation of the statute or was required by a particular provision of the Constitution, only that "under 6th Circuit Precedent, I am eligible for the sentence reduction." [R. 2-2 at 1] The warden denied that grievance on April 22, 2010, noting that because Pruitt's projected release date on March 10, 2014, was nearly four years away, Pruitt had not been interviewed for possible participation in the RDAP, and that such an interview would not be conducted until approximately two years before his projected release date. [R. 2-2 at 2]

Pruitt appealed that determination to the Mid-Atlantic Regional Office ("MARO") on April 28, 2010. In his Form BP-230, Pruitt argued that an RDAP interview must be conducted at least 41 months prior to his projected release date to receive the full benefit of program participation, assuming he were to receive the full benefit of both the one year sentence reduction and the one year maximum placement in a residential re-entry center authorized under the Second Chance Act. Pruitt's

appeal addressed the procedural barrier to considering his request on the merits; Pruitt did not make any reference to a substantive basis for granting relief. [R. 2-3 at 1-2] MARO denied Pruitt's appeal on July 14, 2010, indicating that his scheduled interview for RDAP participation on or around March 10, 2011, three years prior to his projected release date, would provide sufficient time for him to receive the full benefit from both provisions if he were determined eligible. [R. 2-3 at 3]

On July 28, 2010, Pruitt appealed MARO's denial in a Form BP-231 filed with the BOP's Central Office. In it, Pruitt chastised MARO for failing to address his substantive claim that he was eligible for a sentence reduction, a claim he failed to make in his Form BP-230, and again asserted that his request for an eligibility determination was not premature. In his appeal, Pruitt again did not identify a statutory or constitutional basis for his assertion that he is eligible for a sentence reduction upon completion of the RDAP, but twice indicated that his claim was predicated upon "Sixth Circuit Precedence." [R. 2-4 at 1-2] Pruitt indicates that he has not received a response to his appeal from the Central Office within the time permitted by 28 U.S.C. § 542.18, and is therefore entitled under the regulation to treat that omission as a denial of his appeal.

## II. Discussion

Federal law requires a prisoner wishing to file a habeas corpus petition under 28 U.S.C. § 2241 to exhaust his or her administrative remedies before doing so.

*Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 230-31 (6th Cir. 2006). Requiring exhaustion of remedies available within the agency whose actions are being challenged preserves the agency's administrative authority by providing the agency with "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). A prospective litigant must present their claim for relief in such a manner to "give the agency a fair and full opportunity to adjudicate their claims ..." *Id.* at 90.

In his inmate grievances, Pruitt did not articulate or even suggest a legal basis to support his assertion that he was eligible for the sentence reduction available under Section 3621(e)(2)(B) notwithstanding his conviction for being a felon in possession of a firearm. Rather, Pruitt asserted only that his belief was based upon "Sixth Circuit Precedence." Notably absent from Pruitt's petition before this Court is any citation or reference to Sixth Circuit authority in support of his position; instead, instead he seeks relief predicated solely upon a decision of the United States Supreme Court. The question therefore is whether Pruitt's bare reference to Sixth Circuit authority provided the Bureau of Prisons with sufficient notice of the nature of his claim to satisfy the requirement that the agency be given the first opportunity to address a claim outside of a court of law. A review of the relevant law makes clear that it does not.

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court addressed the

question of "how courts determine whether a prisoner has properly exhausted administrative remedies - specifically, the level of detail required in a grievance to put the prison and individual officials on notice of the claim." *Id.* at 205. Citing *Woodford*, the Court held that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218. While the issue in *Jones* arose under the statutorily-mandated exhaustion requirement of 28 U.S.C. § 1997e rather than the judicially-imposed exhaustion requirement applicable to habeas petitions asserted under 28 U.S.C. § 2241, the Court has previously noted that the exhaustion required under both circumstances serves similar purposes, and hence bears similar characteristics and requirements. *Woodford*, 548 U.S. at 92 (noting the exhaustion requirements "are similar in purpose and design and implicate similar concerns,") (*citing Keeney v. Tamayo-Reyes*, 504 U.S. 1, 7 (1992)). Holding that the PLRA does not require an inmate to identify a particular prison official in a grievance, the *Jones* Court cited a recent Fifth Circuit decision with approval: "We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation." *Jones*, 549 U.S. at 219 (*quoting Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)).

A question not directly addressed by *Jones*, and which has received scant consideration in the case law, is the extent to which a prisoner must articulate the factual and legal basis for his substantive claim in the prison grievance to satisfy the exhaustion requirement. *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002) ("Very few courts have addressed what things an administrative grievance must contain ...")). In *Strong*, a civil rights case governed by the PLRA's statutory exhaustion requirement, the court held that the content of the grievance is governed by the administrative system itself. *Id.* at 649: "[Prison] grievances must contain the sort of information that the administrative system requires." Where, as in *Strong*,

> [t]he administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.

*Id.* at 650; *see also Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (adopting *Strong* standard).

Similarly, the Second Circuit has held that, unless prison regulations expressly require more specific and detailed allegations, whether a grievance satisfies the exhaustion requirement is governed by rules of notice pleading, and must therefore:

> contain allegations sufficient to alert the defendants to the nature of the claim and to allow them to defend against it. ... In order to exhaust, therefore, inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures.

*Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004).

As in each of these cases, the applicable regulations of the Bureau of Prisons do not set forth any particular level of specificity in the grievance. An inmate must first present "an issue of concern" informally, and then must file a formal grievance with the warden on a form which includes "all requested identifying information and ... [states] the complaint ..." 28 C.F.R. § 542.13(a), § 542.14(b)(3); Program Statement 1330.16. Absent more stringent regulatory requirements, under the *Strong* and *Johnson* standard, a grievance need only satisfy the requirements of notice pleading. This standard requires a grievance to provide prison officials with notice of "the nature of the wrong for which redress is sought."

Under most circumstances, a prisoner will satisfy this standard by merely stating the factual basis for his or her claim. A statement in a grievance that medical care being received for an injury is insufficient, whether couched in terms of "inadequacy", "negligence", or "deliberate indifference," will generally satisfy the exhaustion requirement for a subsequently-filed complaint challenging that medical care under the Eighth Amendment. Similarly, a grievance which complains that prison officials are violating a prisoner's "religious rights" or freedom of religion will administratively exhaust a subsequently asserted claim, whether pursued under the First Amendment or a statutory enactment like the Religious Land Use and

Institutionalized Persons Act, 42 U.S.C. § 2000cc-1. In each of these circumstances, the nature of the legal claims which may flow from the conduct described in the grievance is largely, if not entirely, self-evident from the factual description alone, without the need for further explication. Accordingly, the prisoner's description of the factual basis for his or her complaint is generally sufficient, without more, to provide prison officials with the information necessary to fully and adequately respond to the concern.

There will be instances, however, where the contents of a prison grievance are so nonspecific, either factually or legally, that they fail to provide the required notice to prison officials. *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004) ("As a practical matter, the amount of information necessary will likely depend to some degree on the type of problem about which the inmate is complaining."). A grievance may lack the required factual specificity where it fails to identify or distinguish between one or more unrelated events or conditions. *Johnson v. Woodford*, No. CV 04-05995-GHK, 2010 WL 4007308, at *4 (C.D. Cal. April 20, 2010) ("Where one set of facts and circumstances gives rise to more than one potential claim, the plaintiff cannot exhaust all of the potential claims by merely exhausting one such claim."). For instance, a grievance complaining of insufficient medical care generally or with respect to one medical condition will not provide notice of a prisoner's unhappiness with respect to medical care received for another, unrelated condition. Likewise, a

grievance complaining that another prisoner attacked the grievant on a particular date may not provide notice regarding an assault by another inmate, or the prison's failure to protect the inmate generally. *Cf. Morton v. Hall*, 599 F.3d 942, 945-46 (9th Cir. 2010) (exhaustion of grievance complaining of prison's denial of certain visitation privileges did not exhaust failure to protect claim even where assault by other prisoners led to the denial of visitation rights); *Rodgers v. Tilton*, No. CIV S-07-2269, 2009 WL 3781075, at *8 (E.D. Cal. Nov. 10, 2009) (exhaustion of grievance arising out of alleged incident of excessive force by one guard did not exhaust administrative remedies for claims against other officers arising out of subsequent medical care or harassment by guards); *Bird v. Galle*, No. CV 08-8530-CAS, 2009 WL 324 2297(C.D. Cal. Oct. 8, 2009) (grievance requesting open space for worship failed to exhaust claim relating to prison's denial of possession and use of ceremonial items).

Similarly, a grievance may lack the required legal specificity where the failure to specify the nature of the legal claim in the grievance effectively deprives prison officials of a meaningful opportunity to address the problem. As a general matter, a grievance is not a legal document, and a prisoner is not required to articulate legal theories for relief. *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) ("A grievance need not include legal terminology or legal theories *unless they are in some way needed to provide notice of the harm being grieved.*") (emphasis added). As the *Griffin* court noted, however, a grievance must provide notice of the problem at hand,

and if identification of a particular legal theory is necessary to give such notice, it must be set forth in the grievance. *Cf. Dye v. Kingston*, 130 F. App'x 52, 56 (7th Cir. 2005) (grievance listing items confiscated by prison, including deodorant, tennis shoes, and two Bibles, exhausted claim regarding confiscation but failed to give notice of claim that confiscation interfered with free exercise of religion); *Gonzalez v. O'Connell*, 355 F.3d 1010, 1017 (7th Cir. 2010) (petitioner seeking habeas relief under Section 2241 failed to administratively exhaust constitutional claim where he failed to present statutory claim, a logical predicate to his constitutional claim, to the agency for determination).

In an instructive case, an African-American inmate filed a civil rights complaint in which he contended, as he had during the prison grievance process, that guards had failed to protect him from sexual assaults by other inmates because he was homosexual. The Fifth Circuit found such claims exhausted, but held that equal protection claims contending that guards had also failed to protect him on account of his race, a factor not mentioned in his grievances, were not exhausted. The court explained:

> Even though Johnson need not present a full-fledged legal theory in his grievance, his grievances must alert prison officials to a problem and give them an opportunity to address it. His grievances gave them notice that there was a problem with protection from sexual assaults, but we do not think that they can be read to give notice that there was a race-related problem.

> n.9. To be sure, Johnson's Eighth Amendment and Equal Protection claims are not wholly unrelated: His race, he claims, is part of the reason why the defendants failed to protect him. ... Nonetheless, these claims reflect distinct problems with prison staff, and a grievance that suggested a racial component to Johnson's situation could be expected to produce a different type of administrative response. We do not believe that it is too much to ask that a prisoner at least suggest a racial component if he is later going to sue on that ground.

*Johnson v. Johnson*, 385 F.3d 503, 517-18 (5th Cir. 2004). *See also Valienterbanales v. Robinson*, No. 7:06cv00327, 2006 WL 1540995, at *1-2 (W.D. Va. May 31, 2006) (prisoner's grievance requesting reinstatement to prior job failed to exhaust claim that he was terminated in the first instance on account of his race).

In the present case, Pruitt made no mention of the legal basis for his claim that he was eligible for a sentence reduction upon completion of the RDAP notwithstanding his firearms conviction under Section 922(g). Unlike a grievance complaining of inadequate medical care or the failure to protect the inmate, where both the practical necessity for and legal basis requiring such conduct is self-evident, a legal claim such as Pruitt's might derive from numerous, distinct sources. For instance, Pruitt's nonspecific contention that his ineligibility was contrary to Sixth Circuit law might have based upon an argument that his felon-in-possession conviction was invalid in the first instance, or had subsequently been vacated on appeal or collateral review; that the BOP's administrative regulations precluding eligibility were not adopted in compliance with the Administrative Procedures Act;

that the regulations were improperly applied on a categorical basis instead of resting upon an individualized assessment of the inmate's offense history; or that the regulations violated some a separate statutory command or constitutional provision. Where an inmate could intend to assert any one of many distinct legal bases for relief which do not flow obviously or inexorably from the fact situation at hand, neither necessity nor reason require prison officials to engage in unguided speculation into all of the possible grounds for complaint. In such circumstances, the prisoner must identify the legal basis for relief as it will be "in some way needed to provide notice of the harm being grieved.") *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). To be clear, the grievance need not necessarily use legal terminology or cite to specific statutes, constitutional provisions, or even particular cases: so long as what is set forth in the grievance is sufficient to put prison officials on notice of the claim and allow them the first opportunity to address the problem, the exhaustion requirement will be satisfied. Where, as here, the grievance makes no effort to identify the nature of the alleged legal deficiency claimed, prison officials cannot be required to guess at the prisoner's intentions. *Cf. Watson-El v. Wilson*, 2010 WL 3732127, No. 08-C-7036, at *9 (N.D. Ill. Sept. 15, 2010) (where prisoner filed grievance challenging BOP's placement of administrative hold on his trust account as violation of due process, subsequent claim that hold was placed to coerce him to provide information on contraband "cannot [be pursued] in federal court having never

given the prison the opportunity to investigate and correct the situation. The plaintiff's grievance was insufficient to alert prison officials to the 'nature of the wrong.'")

Accordingly, **IT IS ORDERED** that:

1. Pruitt's petition for a writ of habeas corpus [R. 2] is **DENIED.**

2. The Court will enter an appropriate judgment.

This __3__ day of January, 2011.

_____
HENRY R. WILHOIT, JR.
SENIOR U.S. DISTRICT JUDGE